**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| **VERONICA NORRIS,** ) | **CASE NO.1:12CV3138** |
| ) | |
| **Plaintiff,** ) | **JUDGE CHRISTOPHER A. BOYKO** |
| ) | |
| Vs. ) | |
| ) | |
| **PEOPLE'S CREDIT CO., INC., ET AL.,** ) | <u>**OPINION AND ORDER**</u> |
| ) | |
| **Defendant.** ) | |

<u>**CHRISTOPHER A. BOYKO, J:**</u>

This matter is before the Court on Plaintiff Veronica Norris's Motion to Remand (ECF # 6). For the following reasons, the Court denies Plaintiff's Motion.

According to Plaintiff's Complaint, Plaintiff, an Ohio resident, purchased a vehicle from Defendant LCA Auto Wholesalers LTD., ("LCA") an Ohio company specializing in selling and financing used vehicles. Defendant People's Credit Co., Inc., ("People's") purchases Retail Installment Sales agreements from automobile sellers such as LCA.

On March 14, 2011, Norris visited LCA to purchase a motor vehicle. She purchased from LCA a 2002 Mercury Moutaineer for a sales price of $8, 235.69. The sales tax was $657.64 and title and documentary fees were $50 and $250.00 respectively, bringing the total purchase price to $9,193.33. Norris made a down payment of $2,300.00 and financed the

balance of $6893.33 at a rate of 25% pursuant to a Retail Installment Sales Contract ("RISC"). LCA then assigned the RISC to People's.

Plaintiff's Complaint contends that the National Automobile Dealers Association ("NADA"), publishes vehicle valuations used by banks and insurance companies as well as consumers.  According to the NADA valuation, a 2002 Mercury Mountaineer with the same options, same model and with the same mileage (139, 843) as the one purchased by Norris was valued at $6,525.00[1].  This figure includes a markup over the trade-in value, which NADA values at $4,175.  LCA sold the 2002 Mercury Mountaineer to Norris at a price 26% higher than the NADA valuation.

In Ohio, the legal maximum Annual Percentage Rate ("APR") a seller may charge is 25%.  Because the dealer's selling price exceeded the NADA valuation by $1710.69, with additional sales tax of $136.86, these extra charges were incident to the extension of credit and should have been included in the finance charge.  Because they are finance charges, Norris' actual APR exceeds the statutory 25% limit.  This increase in the base price would not have been charged to a cash buyer and was imposed on Norris because of her poor credit.

The RISC contains the following clause:

NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.

Based on the above language, Plaintiff contends People's, as holder of the RISC, is

---

[1]  Plaintiff has subsequently represented that the NADA figure quoted in her Complaint is erroneous.

2

derivatively liable to Plaintiff and the purported class.

Plaintiff's Complaint further alleges that People's is one of the leading finance companies in the subprime customer market in the United States. People's does not advance the full amount financed to the dealership; instead, it applies a discount to offset the additional risks it assumes by purchasing RISC's from people with poor or limited credit. People's underwriting process dictates how much it will advance on a vehicle financed by a dealership. People's loan underwriters submit a questionnaire to dealerships to determine the creditworthiness of the buyer. Depending on the credit evaluation, People's discounts the amount paid to a dealership when they purchase an assignment, ranging from 25% to 35% of the sales price. People's discount is imposed on the purchaser, in this case, Norris, without disclosing the discount to the purchaser.

Plaintiff's Complaint alleges Consumer Sales Practices Act ("CSPA") violations, Usury, Retail Installment Sales Act ("RISA") violations, Derivative Liability, and Conspiracy claims.

Plaintiff filed this action in the Cuyahoga County Court of Common Pleas on November 13, 2012. Defendant People's was served with the Complaint on December 3, 2012, and on December 31, 2012, Defendant removed the case to this Court under the Class Action Fairness Act ("CAFA"). According to People's, CAFA's jurisdictional requirements are met. Plaintiff moved to remand back to state court, contending that the amount in controversy is not met.

**Standard of Review**

28 U.S.C. § 1441 "provides that an action is removable only if it could have initially been brought in federal court." *Cole v. Great Atl. & Pacific Tea Co.*, 728 F.Supp. 1305, 1307 (E.D. Ky.1990). Put another way, "[a] civil case that is filed in state court may be removed by the

defendant to federal district court if the plaintiff could have chosen to file there originally." *Warthman v. Genoa Twp. Bd. of Trs.*, 549 F.3d 1055, 1059 (6th Cir.2008).  The burden of establishing federal jurisdiction rests upon the removing party, i.e., the defendant.  *Alexander v. Elec. Data Sys. Corp.*, 13 F.3d 940, 949 (6th Cir.1994).  "Concern about encroaching on a state court's right to decide cases properly before it, requires this court to construe removal jurisdiction narrowly."  *Cole*, 728 F.Supp. at 1307 (citing *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 109 (1941)).  A removed case *must* be remanded if the district court lacks subject matter jurisdiction.  28 U.S.C. § 1447(c).  In addition, "[w]here there is doubt as to federal jurisdiction, the doubt should be construed in favor of remanding the case to the State court where there is no doubt as to its jurisdiction."  *Walsh v. Am. Airlines, Inc*., 264 F.Supp. 514, 515 (E.D.Ky.1967); see also *Breymann v. Pennsylvania, O. & D. R.R.*, 38 F.2d 209, 212 (6th Cir.1930).

Defendant alleges federal jurisdiction based on CAFA, 28 U.S.C. §1332(d).  CAFA's jurisdictional provision, as codified in 28 U.S.C. § 1332(d), "confers federal jurisdiction over class actions in which the matter in controversy exceeds $5 million, there is minimal diversity of citizenship, and the proposed class includes at least one hundred members."  *In re Mortgage Electronic Registration Systems, Inc*. 680 F.3d 849, 853 (6th Cir. 2012).  "A party seeking a federal venue by virtue of removal must establish the jurisdictional requirements of that venue. (Internal citation omitted).  CAFA does not alter the fact that 'the removing defendant has the burden of demonstrating, by a preponderance of the evidence, that the amount in controversy requirement has been met.'"  *Smith v. Nationwide Property and Cas. Ins. Co.* 505 F.3d 401, 404 (6th Cir. 2007) quoting *Brown v. Jackson Hewitt, Inc.,* No. 1:06-cv-2632, 2007 WL 642011, *2

4

(N. D. Ohio 2007).

Defendants may meet their evidentiary burden to show the jurisdictional amount in controversy:

> by contentions, interrogatories or admissions in state court; **by calculation from the complaint's allegations**[;] by reference to the plaintiff's informal estimates or settlement demands[;] or by introducing evidence, in the form of affidavits from the defendant's employees or experts, about how much it would cost to satisfy the plaintiff's demands.

*Frederick v. Hartford Underwriters Ins. Co.,* 683 F.3d 1242, 1247 (10th Cir. 2012).

"In considering a motion for remand, '[t]he question is not what damages the plaintiff will recover, but what amount is 'in controversy' between the parties.'" *Cowit v. CitiMortgage, Inc.* No. 1:12CV869, 2013 WL 142893, *5 (S.D.Ohio 2013) quoting *Brill v. Countrywide Home Loans,* 427 F.3d, 446, 448 (7th Cir.2005). See also *Schiller v. David's Bridal, Inc.,* No. 1:10cv616, 2012 U.S. Dist. LEXIS 80776, at *6, 2010 WL 2793650 (E.D.Cal. July 14, 2010) ("amount in controversy is determined by universe of what the plaintiff puts at-issue in the complaint"). "Defendant need not admit liability in order to remove. Rather, Defendant is entitled to rely on the allegations in the Complaint..." *Cowit* at *6. The Supreme Court, in describing the burden on the party seeking federal jurisdiction, has stated:

> Moreover, the status of the case as disclosed by the plaintiff's complaint is controlling in the case of a removal, since the defendant must file his petition before the time for answer or forever lose his right to remove. Of course, if, upon the face of the complaint, it is obvious that the suit cannot involve the necessary amount, removal will be futile and remand will follow. But the fact that it appears from the face of the complaint that the defendant has a valid defense, if asserted, to all or a portion of the claim, or the circumstance that the rulings of the district court after removal reduce the amount recoverable below the jurisdictional requirement, will not justify remand. And though, as here, the plaintiff after removal, by stipulation, by affidavit, or by amendment of his pleadings, reduces the claim below the requisite amount, this does not deprive the district court of jurisdiction

*St. Paul Mercury Indem. Co. v. Red Cab Co.* 303 U.S. 283, 291-292 (U.S. 1938).

According to People's Notice of Removal (ECF #1), it is apparent from the face of Plaintiff's Complaint that all the jurisdictional requirements under CAFA for removal are met. CAFA requires at least one hundred class members. Plaintiff's Complaint alleges the class numbers "at least in the hundreds." (Complaint at ¶ 56). Plaintiff is an Ohio resident, while People's is an Oregon corporation.

According to the affidavit of People's Vice President Elizabeth Barnett attached to its Notice of Removal:

> Between May 31, 2006 and December 17, 2012 People's purchased 2,329 consumer retail installment contracts from automobile dealerships in Ohio. The total contract value of those contracts was $13,185,925, exclusive of finance charges. During that same time period, People's purchased 281 consumer retail installment contracts from LCA Auto Wholesalers, Ltd. The total contract value of those contracts was $1,711,332, exclusive of finance charges.

Plaintiff's Complaint alleges that each vehicle purchased in Ohio and financed through People's violates RISA and constitutes Usury. (Complaint at ¶ 4). In her Prayer for Relief, Plaintiff asks for actual damages and "rescission of all the transactions at issue and an order requiring Defendants to restore to Plaintiff and the class all money received from them." Therefore, People's representative's affidavit, attesting to 2,329 contracts totaling $13,185,925 purchased from Ohio dealers in the class time frame, provides sufficient, unrebutted evidence that $13,185, 925 is the amount in controversy.

Furthermore, according to People's, Plaintiff's actual damages would be $4, 302, 943.95. People's arrives at the figure as follows:

> Plaintiff claims that LCA improperly increased the price of her vehicle by $1,710.69, and that she paid sales tax of $136.86 on that amount, for a total of $1,847.55 over and above the alleged cash price. Assuming that is the base

6

>amount of her claimed actual damages, assuming those damages were typical of those claimed by the putative class, and assuming a class size of 2,329 (the number of Ohio contracts assigned to People's during the class period), that would yield actual class damages of $4,302,943.95.

Notice of Removal ¶15.

Once the Court factors in punitive damages and attorney fees as claimed in Plaintiff's Complaint with the actual damages alleged in Plaintiff's Complaint, the amount in controversy is easily met.

Plaintiff claims she erred in defining the relevant class period because the statute of limitations on a claim for violation of RISA for Usury is six years. Therefore, the class period is shorter by approximately six months and would run from November 13, 2006. As a result, there would be less transactions at issue. However, People's has presented an additional affidavit from Elizabeth Barnett attesting that none of the 2,329 transactions at issue predate the revised November 13, 2006 starting date for the class period. Therefore, even if the Court were to consider the new class period, the number of transactions at issue would remain unchanged.

Plaintiff further contends People's 2,329 transactions figure fails to account for transactions that were disposed in bankruptcy, or those wherein People's obtained judgments on defaulted loans. These transactions would not be part of the transactions at issue and would reduce the amount in controversy. Norris speculates that the number of these excluded transactions would be high because these were high interest loans made to people with extremely poor credit. However, Plaintiff offers no evidence to support such speculation.

Plaintiff also disputes People's calculation of actual damages. According to Plaintiff, assuming 2,329 transactions are at issue and the total value of the transactions is $13,185,925, then the average transaction is $5662.00. However, Norris complains that the total amount

7

financed in her transaction was $6893, which is approximately 22% above People's average of $5662. Therefore, People's has inflated the total class damages based on Plaintiff's own transaction, which is considerably higher than the class average, and must be considered an aberration that does not reflect the average class damages.

Plaintiff also contends rescission is most likely not available to the class because her claim for violation of the CSPA, which allows for rescission as a remedy, was brought solely against LCA Auto and not against People's, and was pled as an individual claim and not a class claim. According to Plaintiff, no class claim in her Complaint permits rescission as a remedy, therefore, People's contention that the total amount in controversy is $13, 185, 925 is erroneous as a matter of law.

The same is applicable to People's argument that attorney fees be considered in the Court's analysis of the amount in controversy. According to Plaintiff, the only statutory provisions allowing Plaintiff to collect attorney fees are found in Plaintiff's individual claims and are not permitted under Plaintiff's class claims.

Lastly, Plaintiff contends it is unlikely she can recover punitive damages since they were only sought in her Criminal Usury claim and Plaintiff did not allege a Fraud claim and did not allege Defendants acted with malice or reckless disregard. Norris concedes:

> "although Ms. Norris had pled punitive damages as a zealous class representative, the Court must measure the relative likelihood of his achieving a punitive damages award in the class context against the monetary value, if any, to be ascribed to this claim for purposes of determining whether CAFA's jurisdictional amount is met. Ms. Norris acknowledges that the prospect of obtaining punitive damages in this class action under Ohio law is nil.."

(Motion to Remand pg. 14).

Lastly, Plaintiff argues this case is subject to the local controversy exception under 28

8

U.S.C. §1332(d)(4) which applies to claims "that uniquely affects a particular locality to the exclusion of all other."

## LAW AND ANALYSIS

"The Class Action Fairness Act of 2005 (CAFA) provides that the federal 'district courts shall have original jurisdiction' over a civil "class action" if, among other things, the 'matter in controversy exceeds the sum or value of $5,000,000.' 28 U.S.C. § 1332(d)(2), (d)(5). The statute adds that 'to determine whether the matter in controversy exceeds the sum or value of $5,000,000,' the 'claims of the individual class members shall be aggregated.' § 1332(d)(6)." *Standard Fire Ins. Co. v. Knowles* 133 S.Ct. 1345, 1347 (2013).

The parties do not dispute that the class exceeds one hundred members and the parties are minimally diverse since Plaintiff is an Ohio resident and Defendant People's is an Oregon based company. Thus, the dispute is solely over the jurisdictional amount in controversy.

Having reviewed the Complaint, Motion to Remand, Opposition, Reply and supporting materials, the Court finds People's has established, by a preponderance of the evidence, that the amount in controversy exceeds the statutory threshold amount of $5,000,000. People's has supported its position with an affidavit of its Vice President, Elizabeth Barnett, attesting to the number of transactions at issue and the value of those contracts. Because Plaintiff's Complaint expressly requests rescission of all contracts of the class, and because People's has offered unrebutted evidence of the number and amount of those contracts, People's burden is met. The Court is compelled to consider the face of the Complaint at the time of removal, which expressly requests rescission on behalf of the entire class. Plaintiff's representations, stipulations amendments after removal cannot divest the Court of jurisdiction so long as it appears from the

9

face of the Complaint such relief is requested.

While Plaintiff disputes that all the transactions would ultimately be applicable to her class claims, the Court's focus must be on the claims contained in the Complaint at the time of the removal. "Jurisdiction is determined at the time of removal, and subsequent events, 'whether beyond the plaintiff's control or the result of his volition, do not oust the district court's jurisdiction once it has attached.' " *Williamson v. Aetna Life Ins. Co.,* 481 F.3d 369, 375 (6th Cir.2007) (quoting *St. Paul Mercury Indem. Co. v. Red Cab Co.,* 303 U.S. 283, 293, (1938)). See also *Harper v. AutoAlliance Int'l, Inc.,* 392 F.3d 195, 210 (6th Cir.2004) ("The existence of subject matter jurisdiction is determined by examining the complaint as it existed at the time of removal."). Furthermore, Plaintiff's contention that she would not be entitled to rescission on behalf of the class directly contrasts with her prayer seeking just such a remedy. Although Plaintiff claims she is not entitled to rescission of all class claims, she provides no such authority, and the Court cannot conclude to a legal certainty such relief is unavailable under all her class claims.  She merely represents such a conclusion in her Motion to Remand that she would not be entitled to it on a class basis.[2] This presents a potential Rule 11 violation by representing in a Complaint entitlement to relief in aid of class certification only to later disclaim entitlement to the same relief in an attempt to defeat federal jurisdiction.  As another judge of this Court stated, "such assertions serve only to mislead the parties and courts and smacks of gamesmanship, at the least, and abuse of process at worst." *Pate v. Huntington Nat'l Bank*,

---

[2]   In fact, Plaintiff's counsel now asserts that, contrary to the allegations in the Complaint, the class time period is wrong, Plaintiff is not entitled to punitive damages or rescission, the NADA report Plaintiff cited to and relied on to calculate her damages is the wrong report and Plaintiff's damages are an "aberration" and do not reflect the damages suffered by the rest of the class.

10

No.5:12CV1-44, 2013 WL 557195 *4 n.2 (N.D. Ohio Feb. 12. 2013). Furthermore, the Sixth Circuit has expressly held that even claims that are subsequently dismissed must be factored into the amount in controversy if they were present in the Complaint at the time of removal. "In gauging the amount in controversy, courts view the claims from the vantage point of the time of removal. Claims present when a suit is removed but subsequently dismissed from the case thus enter into the amount-in-controversy calculation." *Everett v. Verizon Wireless, Inc*. 460 F.3d 818, 822 (6th Cir. 2006).

Plaintiff claims all of People's transactions relating to its purchase of Retail Installment Contracts from Ohio dealers in the relevant time period were usurious. (Complaint at ¶4). Therefore, as People's points out, all its transactions with Ohio dealers in the relevant time period are "in controversy." Regardless of whether Plaintiff's claims will withstand a Motion to Dismiss or Summary Judgment, the Court must consider those claims and the relief sought as presented at the time of removal. Based on the evidence presented by Defendant, the cost of rescission exceeds the statutory amount in controversy limitation. Therefore, People's has met its burden to show federal jurisdiction.

Even if the Court were to agree that, to a legal certainty, Plaintiff is not entitled to rescission, which the Court cannot conclude since neither party has provided case law to the effect, Defendant offers the Barnett affidavit demonstrating that Plaintiff's actual damages, which are assumed to be typical of the putative class, presents a total amount of $4,302,943.95. This figure is calculated using Plaintiff's alleged actual damages of $1,847.55 multiplied by the total number of transactions at issue, 2,329. This amount does not take into account punitive damages, attorney fees, nor the cost of credit correction sought by Plaintiff. Furthermore,

People's argues that RISA entitles a Plaintiff to an 8% add-on rate for adjustments to the finance rate in her contract.  That add-on rate is applied to the entire amount financed under the loan which, when applied to Plaintiff's facts, results in $1233.50 additional recovery.  When applied to the class that figure totals $2,872,821.50.  When added to Plaintiff's alleged actual damages the amount easily exceeds the $5,000,000 statutory amount.  Therefore, People's has shown the amount in controversy is met and the Court has jurisdiction.

Plaintiff argues that Remand is appropriate under 28 U.S.C. § 1332(d)(4)'s local exception.  According to Section 1332(d)(4):

(4) A district court shall decline to exercise jurisdiction under paragraph (2)--
(A)(i) over a class action in which–

> (I) greater than two-thirds of the members of all proposed plaintiff classes in the aggregate are citizens of the State in which the action was originally filed;
>
> (II) at least 1 defendant is a defendant--
>
>> (aa) from whom significant relief is sought by members of the plaintiff class;
>> (bb) whose alleged conduct forms a significant basis for the claims asserted by the proposed plaintiff class; and
>> (cc) who is a citizen of the State in which the action was originally filed; and
>
> (III) principal injuries resulting from the alleged conduct or any related conduct of each defendant were incurred in the State in which the action was originally filed; and
>
> (ii) during the 3-year period preceding the filing of that class action, no other class action has been filed asserting the same or similar factual allegations against any of the defendants on behalf of the same or other persons; or

(B) two-thirds or more of the members of all proposed plaintiff classes in the aggregate, and the primary defendants, are citizens of the State in which the action was originally filed.

Plaintiff does not distinguish whether she claims an exception under Section A or B.

According to Plaintiff, more than two-thirds of the Plaintiff class are Ohio citizens and LCA is a primary Defendant, accounting for significant damages of 12% of the transactions at

issue based on People's affidavit.

CAFA does not define "primary defendant," "significant relief" or "significant basis" and the Sixth Circuit has not opined on the definition of the above terms. At least one court within this circuit that has considered the exceptions to federal jurisdiction in CAFA has determined it is Plaintiff's burden to show by a preponderance of the evidence that an exception applies and all doubts must be construed in favor of federal jurisdiction when the other CAFA jurisdictional requirements are met. See *American Gen. Financial Services v. Griffin*, 685 F.Supp.2d 729 (N.D.Ohio, 2010.).

Although the Sixth Circuit has yet to define "primary defendant," at least one court within this circuit that considered the issue held "primary defendants are those believed to be liable to the vast majority of the class members." *Kendrick v. Standard Fire Ins. Co.,* No. 06–141–DLB, 2007 WL 1035018, at *5 (E.D.Ky. Mar. 31, 2007). This Court believes it is useful to consider the committee notes on CAFA when determining the intent of the exception. The Senate Committee elaborated on the application of the exception as follows:

> Under the second criterion, there must be at least one real local defendant. By that, the Committee intends that the local defendant must be a primary focus of the plaintiffs' claims–not just a peripheral defendant. The defendant must be a target from whom significant relief is sought by the class (as opposed to just a subset of the class membership), as well as being a defendant whose alleged conduct forms a significant basis for the claims asserted by the class. For example, in a consumer fraud case alleging that an insurance company incorporated and based in another state misrepresented its policies, a local agent of the company named as a defendant presumably would not fit this criteria. He or she probably would have had contact with only some of the purported class members and thus would not be a person from whom significant relief would be sought by the plaintiff class viewed as a whole. Obviously, from a relief standpoint, the real demand of the full class in terms of seeking significant relief would be on the insurance company itself. Similarly, the agent presumably would not be a person whose alleged conduct forms a significant basis for the claims asserted. At most, that agent would have been an isolated role player in the

13

> alleged scheme implemented by the insurance company.  In this instance, the real target in this action (both in terms of relief and alleged conduct) is the insurance company, and if that company is not local, this criterion would not be met.

S. REP. 109-14, 39-40, 2005 U.S.C.C.A.N. 3, 38

In light of the above guidance, the Court finds the local controversy exception is not applicable to the allegations in Plaintiff's Complaint because the bulk of the recovery sought is from People's, an out-of-state Defendant.  Local Defendant LCA sold roughly 12% of the Retail Installment contracts at issue to People's as attested to by Barnett.  Therefore, only 12% of the purported class would be entitled to seek damages from LCA, while 100% of the class seeks to recover from People's.  Thus, the vast majority of the putative class members have no claim against in-state Defendant LCA.  Also, the claims asserted against Defendants are largely targeting the discounted rate People's charges dealers to purchase the Retail Installment contracts, which is then passed to the consumer.

Thus, the Court finds the narrow exception to CAFA jurisdiction is not met because the overwhelming number of class members' claims are alleged solely against out-of-state Defendant People's.

Therefore, for the foregoing reasons, the Court finds it has jurisdiction over Plaintiff's Complaint and  denies Plaintiff's Motion to Remand.  Because the Court stayed Defendant's Motion to Dismiss pending a determination on jurisdiction and Plaintiff has put into play several problems with the facts and claims alleged in the Complaint that post date Defendant's Motion to Dismiss, the Court dismisses as moot Defendant's Motion to Dismiss with the right to refile in order to present any additional arguments now raised in the parties' briefing on Plaintiff's Motion to Remand Briefing.

IT IS SO ORDERED.

                                          s/ Christopher A. Boyko  
                                          CHRISTOPHER A. BOYKO  
                                          United States District Judge

Dated: September 27, 2013